# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| NORMAL LUNA, | CASE NO. 10CV1659 JLS (POR) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE OR, IN THE ALTERNATIVE, OPPOSITION TO PETITION FOR WRIT OF ERROR CORAM NOBIS** |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | (Doc. No. 9.) |

Presently before the Court is Defendant United States of America's (Defendant) motion to dismiss with prejudice or, in the alternative, opposition to petition for writ of error coram nobis. (Doc. No. 9 (Mot. to Dismiss).) Also before the Court is Plaintiff Norma Luna's (Luna) response in opposition. (Doc. No. 12 (Opp'n).) For the reasons stated below, Defendant's motion is **GRANTED**.

## BACKGROUND

Twenty-three years after pleading guilty to alien-smuggling charges, Luna now files a petition for writ of error coram nobis pursuant to 28 U.S.C. § 1651(a). (Doc. No. 1 (Compl.).) Pursuant to this writ, Luna requests the Court void her alien-smuggling conviction. (Compl. at 7.)

Luna's story begins in late 1987. On August 23, Luna, Pedro Torres-Ortiz, and Delfina Ramos-Manzo attempted to enter the United States via vehicle at the San Ysidro port of entry.

(Mot. to Dismiss, Ex. A & B.)  At the time, Luna, in the passenger seat, presented a lawfully issued border cross card.  (*Id.*)  And Torres-Ortiz, the driver, presented valid documentation indicating his status as a United States citizen.  (*Id.*)  Problems arose only when Ramos-Manzo, sitting in the back seat, presented a photo-altered Mexican passport.  (*Id.*)

At that moment, Luna and Torres-Ortiz became defendants in an alien-smuggling case, and Ramos-Manzo the principal witness against them.  Luna and Torres-Ortiz were apprised of their Miranda rights and both agreed to speak with United States customs inspectors without an attorney.  (*Id.*)  Luna stated that she was aware Ramos-Manzo was attempting to enter the United States illegally.  (*Id.*)  She was aware of this because she had met Ramos-Manzo on August 22 near a grocery store, and at that time, an unknown Mexican male "stated to [Luna] that Ramos-Diaz [sic] wanted to enter the United States and was going to use the passport of another Mexican National to attempt that entry."  (*Id.*)

Ramos-Manzo, the principal witness, confirmed Luna's story.  And according to Ramos-Manzo, Luna assisted in the scheme by taking Ramos-Manzo to a "nearby photo studio to have her photo taken."  (*Id.*)  Luna then gave the photograph to an the unknown Mexican male, presumably to create a photo-altered Mexican passport.  (*Id.*)

On August 24, 1987, the day after the attempted entry, the United States filed a complaint against Luna and Torres-Ortiz, alleging two counts: Bringing in Alien(s), a felony in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and Bringing in Alien(s), a misdemeanor in violation of 8 U.S.C. § 1324(a)(2)(A). (Mot. to Dismiss, Ex. A.)  Luna was informed of the charges, her right to trial, and her right to counsel.  (*Id.*)  An attorney from the Federal Defenders was appointed to her, and she consented to be tried by magistrate.  (*Id.*)  Luna then pled guilty to the misdemeanor offense.  (*Id.*)  After two days in jail, the execution of the sentence was suspended, and Luna was deported.  (*Id.*; Compl., Luna Decl. ¶ 10.)  In a letter dated August 25, 1987, the Immigration and Naturalization Service (INS) advised Luna of her right to appeal her deportation.  (Mot. to Dismiss, Ex. D.)  She never did.

All was quiet on the western front until 1993.  That year, Luna re-entered the United States without first being inspected by an officer of the INS.  (Compl., Luna Decl. ¶ 11.)  That same year,

1  she married Juan Carlos Luna, a lawful permanent resident. (Compl. at 3.)  The couple now has
2  four children, all born in the united states.  Luna "has no criminal record other than the instant
3  conviction." (*Id.*) "She and her husband own a home and a catering business and they pay taxes
4  accordingly." (*Id.*)

5  On February 23, 2007, Luna signed a Form I-485 application to register permanent
6  residence or adjust status. (Mot. to Dismiss, Ex. E.) The application was rejected because of her
7  alien smuggling conviction. (Mot. to Dismiss, Ex. F.) On April 21, 2008, immigration authorities
8  began removal proceedings against Luna. She was ordered removed on June 15, 2009. (Mot. to
9  Dismiss, Ex. G.)

10  One year later, on July 29, 2010, Luna filed the present petition for writ of error coram
11  nobis. Luna argues that during her 1987 criminal proceeding, defense counsel failed to properly
12  advise Luna "regarding the immigration consequences of a guilty plea." (Reply at 4.) And this
13  failure to advise constituted ineffective assistance of counsel. As a result, Luna seeks to void her
14  prior conviction.

15  **ANALYSIS**

16  "Statute of limitation issues must be resolved before the merits of individual claims."
17  *Rodriguez-Lugo v. United States*, 2010 WL 3167545 (S.D. Cal. Aug. 9, 2010) (citing *White v.*
18  *Klitzkie*, 281 F.3d 920, 921–22 (9th Cir. 2002)).

19  The parties agree that 28 U.S.C. § 2255(f)'s one-year statute of limitations applies to
20  Luna's coram nobis petition. (Opp'n at 2.) The disagreement is when the one-year period begins.
21  (*Id.*) Section 2255(f) provides, in relevant part, that the limitation period shall run from the latest
22  of (1) the date on which the judgment of conviction becomes final; or (3) the date on which the
23  right asserted was initially recognized by the Supreme Court, if that right has been newly
24  recognized by the Supreme Court and made retroactively applicable to cases on collateral review.
25  28 U.S.C. §§ 2255(f)(1), (3). Under § 2255(f)(1), the one-year period begins running on "the date
26  on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Applying the facts
27  of this case to § 2255(f)(1), the one-year limitation period for seeking relief expired on September
28  3, 1988.

1    But Luna argues that § 2255(f)(1) does not apply and that § 2255(f)(3) provides the correct starting date. (Opp'n at 2.) On March 31, 2010, the Supreme Court decided *Padilla v. Kentucky*, 130 U.S. 1473 (2010). The Supreme Court held that defense counsel must advise a non-citizen client of the deportation consequences of a guilty plea. *Id.* at 1483. Failure to do so would render counsel's performance deficient under the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984). Luna argues that *Padilla* creates a new right and that the right is retroactively applicable to cases on collateral review. (Opp'n at 3.) Thus, Luna argues that § 2255(f)(3) applies, and the one-year limitation period does not expire until March 31, 2011.

Whether § 2255(f)(3) applies depends on whether *Padilla* created a new rule and whether the rule can be retroactively applied to a case now on collateral appeal. 28 U.S.C. § 2255(f)(3). The district courts disagree on the matter, and the Ninth Circuit has yet to decide.

In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court provided guidance for determining whether a newly announced rule of criminal procedure applies to a case on collateral review. "Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007).

There are two exceptions allowing a new rule to apply to cases on collateral review. *Teague*, 489 U.S. at 1075–76. The first exception is that "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe." *Id.* (internal citations and quotations omitted). The second is that "a new rule should be applied retroactively if it requires the observance of those procedures that are implicit in the concept of ordered liberty." *Id.*

Under *Teague* then, this Court can treat *Padilla* three different ways. First, the rule could be an old rule, one applicable to cases on collateral review. Second, the rule could be an new rule not subject to either exception, thus inapplicable to cases on collateral review. And finally, the rule could be a new rule subject to an exception, thus applicable to cases on collateral review. For § 2255f(3) to apply, *Padilla* must be in this third category.

Without any binding precedent, this Court may forge its own path. But it would be folly to

1  turn a blind eye to the fine analysis other courts have already performed.  *Cf. United States v.*
2  *Hubenig*, 2010 WL 2650625 (E.D. Cal. July 1, 2010) (analyzing *Padilla*'s retroactivity under
3  *Teague*).  After performing an in-depth analysis on *Padilla*, the *Hubenig* court found that *Padilla*
4  evinced an old rule that was could be retroactively applied to cases on collateral appeal.  *Id.* at *8.
5  This Court agrees and echoes *Hubenig* here.

6        The rule assessing ineffective assistance of counsel is stated in *Strickland v. Washington*,
7  466 U.S. 668, 687–88 (1984).  And it has been so well ingrained that it has become an "old, well-
8  established rule of law."  *Hubenig*, 2010 WL 2650625, at * 5 (citing to *Williams v. Taylor*, 529
9  U.S. 362, 369 (2000)).  *Padilla* applied it to a specific set of facts and came to a novel result, but
10  doing so does not create a "new" rule.  Moreover, the *Strickland* inquiry requires a fact analysis
11  specific to each case.  And "[i]f the rule in question is one which of necessity requires a case-by-
12  case examination of the evidence, then we can tolerate a number of specific applications without
13  saying that those applications themselves create a new rule."  *Wright v. West*, 505 U.S. 277,
14  308–09 (1992) (Kennedy, J., concurring.)  And finally, "[t]he idea that reasonably prudent counsel
15  would advise her client with respect to the potential impact of a guilty plea on his immigration
16  status is not a novel concept."  *Hubenig*, 2010 WL 2650625, at * 6.  Because of this, *Padilla* did
17  not apply *Strickland* in a manner sufficient to create a "new rule."  *See Tanner v. McDaniel*, 493
18  F.3d 1135, 1144 (9th Cir. 2007).

19        After performing the required analysis, the Court finds that *Padilla* does not evince a new
20  rule under *Teague*.  And this means that *Padilla* is an old rule that may be applied retroactively.

21        The Court now returns to the question prompting the *Teague* analysis.  Luna argues that,
22  because of the *Padilla* decision, § 2255(f)(3) provides the correct starting date for the statute of
23  limitations.  Section 2255(f)(3) begins running the one-year limitations period on the date the
24  Supreme Court recognizes a new right and makes the new right retroactively applicable to cases
25  on collateral review.  28 U.S.C. § 2255(f)(3).

26        After analyzing *Padilla*, the Court finds that it is not a new rule.  Thus, § 2255(f)(3) does
27  not provide the correct starting date for the statute of limitations.  Under the circumstances,
28  § 2255(f)(1) applies, and the one-year limitation period for seeking relief expired on September 3,

1  1988. Luna's petition for writ of error coram nobis is over 20 years late. And she argues no other
2  basis for tolling the statute of limitations.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss with prejudice is **GRANTED**. Luna's petition for writ of error coram nobis is barred by the statute of limitations and is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

DATED: November 23, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge